No. 34,741

Joseph F. Pedroja, Individually and as Trustee under the Last Will and Testament of Joseph A. Pedroja, Deceased, *Appellee* and *Cross-appellant*, v. Mary J. Pedroja, a Widow, et al., *Appellees;* Lydia Frances Simpson and Mary Louise Waymire et al., *Appellants* and *Cross-appellees.*

(102 P. 2d 1012)

Opinion filed June 8, 1940.

*Robert Stone, James A. McClure, Robert L. Webb, Beryl R. Johnson, Ralph W. Oman,* all of Topeka, *Thomas C. Forbes* and *Harold G. Forbes,* both of Eureka, for the appellants and cross-appellees.

*Homer V. Gooing,* of Eureka, for the appellees.

*Edward E. Pedroja,* of Eureka, for the appellee and cross-appellant.

The opinion of the court was delivered by

ALLEN, J.: This action was for the appointment of a trustee to make oil and gas leases on lands belonging to the devisees under the will of Joseph A. Pedroja. This action was by Joseph F. Pedroja, individually, and as trustee under the will of his father, the testator.

On February 23, 1933, Joseph A. Pedroja died, testate, seized and possessed of various tracts of land in Greenwood county. The will provided:

"II

"I give, devise and bequeath to my wife, Mary J. Pedroja, she surviving me, a one-half interest; and to my children, Joseph F. Pedroja, Daniel A. Pedroja, Mary Louise Waymire and Lydia Frances Simpson, they surviving me, each an undivided one-eighth interest, in and to all the residue of my estate, personal, real or mixed, wheresoever situate or to which I may be entitled at the time of my decease to be enjoyed as hereinafter set out.

"III

"Should my wife not survive me, then and in that event, it is my will and I direct that my estate be divided among my children named in paragraph II hereof, share and share alike, or to the heirs of any child or children who do not survive me under such conditions as are hereinafter provided.

"IV

"I give, devise and bequeath to my wife, Mary A. Pedroja, and to my sons, Joseph F. Pedroja and Daniel A. Pedroja, the residuary shares in my estate as set out in paragraph II herein, to them absolutely and forever.

"V

"It is my will and I direct, that the portion of my said estate descending to my said daughters, Marie Louise Waymire and Lydia Frances Simpson, as set out in paragraph II herein, shall be held in trust for them, and the income therefrom shall be paid to them during the period of their natural lives, and at the death of each of my said daughters that portion of my said estate held in trust for each of them shall descend to and be distributed equally among the heirs of such deceased child; provided, if any grandchild shall not have attained the age of twenty-one (21) years, the portion of said estate descending to said minor shall be held in trust until said minor shall have reached the age of twenty-one (21) years.

"VI

"I do hereby nominate and appoint my sons, Joseph F. Pedroja and Daniel A. Pedroja, joint trustees, with full power to control, operate, invest, reinvest, and annually distribute the income from that portion of my estate that will descend to my said daughters, Marie Louise Waymire and Lydia Frances

Simpson, and in the event one of my said sons should die the survivor shall have full power to continue, control and operate said trust estate. In the event both sons should die before the termination of this said trust, then the probate court admitting this will to probate will appoint a single trustee who, under the restrictions provided by law, shall have full power for the management, control, and distribution of said estate as hereinbefore more particularly set out."

The plaintiff is the Joseph F. Pedroja mentioned in the will, and is the duly qualified and acting trustee under the will.

The other children of the testator are joined as defendants. The minor defendants are the children of the two daughters of the testator named in the will.

The petition set up the foregoing facts and alleged that a part of the land had become valuable for oil and gas; that the oil has been discovered and is now being produced upon one tract of land; that these operations indicate that beneath the surface of the land there are large and valuable deposits of petroleum oil; that because of the migratory character of such minerals there is danger of the drainage of the same by development and operation upon the surrounding and adjacent land; that thereby the interest of the owners will be irreparably injured and this oil and gas thereunder lost unless this land be developed by the owners or some person for them.

It was alleged that the conditions now existing could not have been foreseen by the testator at the time he executed his will; that by reason of the changed conditions, it is necessary to develop the land for oil and gas purposes for the benefit of all concerned; that the possessory owners and contingent remaindermen have not the skill or experience necessary to develop the land for oil and gas; that it is impossible at this time to determine who are the owners of the real estate; that by reason of the changed conditions the terms and conditions of the trust created by the will should be modified by the court and that the execution of oil and gas leases thereon should be ordered and decreed.

It was alleged that the daughters of the testator, Mary Louise Waymire and Lydia Frances Simpson, have only a life interest in the land; that the remainder is to persons who cannot now be ascertained; that there are no contingent remainderman in existence except the parties joined in the action, and that there are no other persons interested in the lands. The petition sets forth the rights and interest of the various parties that may accrue under any oil lease that may be executed; alleges the authority given the plaintiff

as trustee under the will, and prays that he be appointed trustee with authority to execute oil and gas leases upon behalf of the life tenants and on behalf of the remaindermen now in being or who hereafter may come into existence. The petitioner asks that the will be construed and the rights of the parties thereunder be determined.

The defendant, Mary Louise Waymire, filed an answer and cross petition in which it was alleged that she was the legal owner in fee simple in an undivided one-eighth interest in the land. She asked the court to adjudicate and decree that she is the owner in fee of an undivided one-eighth interest in the land in question, and that the plaintiff has no right to act as trustee under the will for defendant Mary Louise Waymire. A similar answer and cross petition was filed on behalf of Lydia Frances Simpson.

A guardian *ad.litem* was appointed for the minor defendants, who filed answers in their behalf. The answers expressly denied the allegations in the answers and cross petitions of Mary Louise Waymire and Lydia Frances Simpson that they owned a fee-simple interest in the lands under the will of Joseph A. Pedroja, and asked that the rights and interests of such minors be protected.

The trial court returned findings of fact upon which judgment was entered. In construing the will, the court found:

"No. 4. That by his last will and testament, which has been admitted to probate in Greenwood county, Kansas, the said Joseph A. Pedroja devised an undivided one-fourth ($\frac{1}{4}$) of his entire estate in trust, and that by the terms of said trust each of the two (2) daughters of the testator, the defendants Mary Louise Waymire and Lydia Frances Simpson, is entitled to receive the income only from an undivided one-eighth ($\frac{1}{8}$) of said estate as long as she lives, to be distributed to her annually, and that upon the death of each of said daughters the title to such undivided one-eighth ($\frac{1}{8}$) interest in said estate will vest in her 'heirs.'

"No. 5. That the income from said estate in which said daughters of the testator are entitled to share includes royalties of oil and gas and proceeds therefrom reserved in all oil and gas mining leases executed by the testator in his lifetime, but does not include royalties of oil and gas, or either of them, reserved in leases or contracts which have been or may be executed covering and affecting any of the lands hereinbefore described subsequent to the death of the testator; but each of said daughters of the testator is entitled to have one-eighth ($\frac{1}{8}$) of such royalties accrued or which may hereafter accrue under oil and gas mining leases executed subsequent to the death of the testator invested safely under orders of the court, and is entitled to the income from such investment.

"No. 6. That all devisees and legatees of the testator, Joseph A. Pedroja, having either vested or contingent interests and who are now in being, are before the court, and the interests of all contingent remaindermen who may

hereafter come into existence are properly and fully represented by the contingent remaindermen in being now before the court.

"No. 7. That the testator, Joseph A. Pedroja, was aware of the prospecting and development for production of oil and gas in the vicinity of his lands aforesaid which he did not lease for oil and gas mining purposes in his lifetime, and intended by his will to give his trustees authority to join in leasing any and all of his lands for oil and gas mining purposes whenever in the judgment of his widow and sons such leasing should appear advisable. That on account of present and prospective production of oil and gas in the vicinity of said lands, and the migratory character of petroleum oil and gas, there is great danger that whatever deposits of oil or gas, or either of them, may underlie said lands may be lost by drainage to nearby oil and gas wells on other lands; and for the protection of the parties hereto, and particularly the beneficiaries in the trust created by the testator's will, the trustee under the will of the said Joseph A. Pedroja, deceased, should be empowered to execute and join in the execution of oil and gas mining leases on said lands in behalf of all persons beneficially interested in said trust, including those in being and also all who may hereafter come into existence."

The court found that "there exists and probably will continue to exist" friction between the trustee and his two sisters, and that in the interest of harmony and efficient management of the trust, that the plaintiff should be removed as trustee, and a new trustee appointed.

The defendants, Mary Louise Waymire and Lydia Frances Simpson, bring this appeal. The plaintiff brings a cross-appeal from the judgment directing that he be removed as trustee.

The appellants, Mary Louise Waymire and Lydia Frances Simpson, contend that each received an undivided one-eighth interest in the estate of the testator, subject only to a provision restricting the enjoyment thereof under the terms of the trust. It is asserted that "the estate devised to the two daughters is in fee simple, encumbered only with a spendthrift trust."

The will seems to have been carefully formulated. Paragraph five of the will provides that the interest given the daughters shall be held in trust for them—the income to be paid to them during the period of their natural lives—at the death of each daughter that portion of the estate held in trust for her is to descend to and be distributed equally among the heirs of such deceased child, and if any grandchild shall not have attained the age of twenty-one, the share of such grandchild to be held in trust until such minor shall have attained that age. The will was executed June 24, 1932—the testator died in February, 1933. Five grandchildren are parties to this suit. While their ages are not stated, doubtless some (possibly

all five) were alive at the date of the will. It is reasonable to suppose the testator at the execution of his will had in mind such of his grandchildren as were then living, and also such others as might thereafter be born. The contention of appellants would strike from the will the gift to the grandchildren.

In support of this theory appellants rely upon *Kinkead v. Maxwell,* 75 Kan. 50, 88 Pac. 523. Under the will before the court in that case the testator devised two-thirds of his real estate "to Annie and Laura A. Stone, equally." By a subsequent clause it was provided:

" 'My daughter Laura A. Stone being of an improvident disposition, I will that my wife shall hold all the property devised to her; this will be in trust for her benefit, she receiving the whole income during her life and then to her heirs, and this I do not from any lack of affection, but from a sense of duty, in order that she may be provided for as long as she lives. I do not wish that there should be any inventory of my property.' " (p. 54.)

It was held that Laura A. Stone took a fee-simple estate in that part of the real estate devised to her. In the opinion, the court stated:

"It is claimed that the words 'the other two-thirds to Annie and Laura A. Stone, equally,' if standing alone, would give a fee-simple estate to each of the daughters named, but that the subsequent paragraph has the effect to change this estate into an estate for life only, so far as Laura, the plaintiff in error, is concerned, and the district court seems to have adopted this view." (p. 54.)

The Kinkead case was decided a few years after *McNutt v. McComb,* 61 Kan. 25, 58 Pac. 965, and *Safe Deposit Co. v. Stich,* 61 Kan. 474, 59 Pac. 1082. In *Markham v. Waterman,* 105 Kan. 93, 95, 181 Pac. 621, it was stated:

"The old rule that a seemingly unqualified devise in an independent and prior clause of a will cannot be diminished by separate, subsequent clauses of the will (*McNutt v. McComb,* 61 Kan. 25, 58 Pac. 965, 4 Kent, Comm. 270), has been largely superseded by the modern Kansas rule, that the testator's intention is to be gleaned 'from the four corners of the instrument'—from the entire text of the document."

In the Kinkead case the court refused to follow the ruling of the trial court that "the subsequent paragraph has the effect to change" the fee simple given to Laura A. Stone in the first paragraph to a life estate. Clearly the court was following the then existing doctrines announced in the McComb and the Stich cases.

But it is urged that in the Kinkead case the court placed emphasis on equality of distribution between the daughters—that the testator

"intended to deal impartially with his daughters." This is true. It is a well-established rule that where the meaning is doubtful or obscure it will be presumed that the testator intended to make equal distribution among his children. That rule was announced in the Kinkead case. The rule has no application where the provisions are neither doubtful nor obscure.

In *Bierer v. Bierer*, 121 Kan. 57, 245 Pac. 1039, the testator, after a life estate to his wife, by the third clause in his will directed that his property "with the exceptions herein provided, shall descend and be distributed among all my children in equal shares." By the fifth clause of the will it was provided that the share of one son was to be held in trust.

The same arguments now advanced were then urged. The court stated:

"It is argued on behalf of appellant that the fifth paragraph of the will should be disregarded, for the reason that under the third paragraph of the will, upon the death or remarriage of testator's widow, the estate is to be divided among the children of the testator share and share alike, and that the testator, having, by this provision of the will, given Daniel Bierer a share of the estate equal to his other children, it was not within the power of the testator to make limitations upon that by a later provision of the will. This argument overlooks the fact that by the third provision of the will the property, upon the death of the testator's widow, 'with the exceptions hereinafter provided,' is to descend to his children share and share alike. Appellant contends that the exceptions referred to pertain only to those set out in the third paragraph of the will, but this contention cannot be sustained. The provisions of the fourth and fifth paragraphs of the will should be considered exceptions to the same extent as though separate paragraphs concerning them had not been made, but all of them had been placed in the third paragraph of the will. A testator is not required to write all the provisions of his will in one sentence, or in one paragraph (*Bullock v. Wiltberger*, 92 Kan. 900, 142 Pac. 950; *Morse v. Henlon*, 97 Kan. 399, 155 Pac. 800), and the will should be construed as a whole for the purpose of determining the intention of the testator." (p. 59.)

In the second paragraph of the Pedroja will the property devised was *"to be enjoyed as hereinafter set out";* in the third paragraph, in the event the wife of the testator should predecease the testator, the property was to go to his children *"under such conditions as are hereinafter provided."* As in the Bierer case, these clauses clearly indicated the estate given the children in the second clause was to be modified by subsequent provisions of the will. By clause five, that portion of the estate "descending to my daughters" was to be held in trust during their natural lives, then to their heirs—the grandchildren of the testator. (The word "descending" is here used

as equivalent to "go to." *Klingman v. Gilbert,* 90 Kan. 545, 549, 135 Pac. 682.)

In *Beverlin v. First National Bank,* 151 Kan. 307, 98 P. 2d 200, the testator devised and bequeathed one-third of his property to his wife and one-third to each of his daughters. In speaking of the gift to the daughters it was there stated: "Except as qualified by subsequent provisions, the language was apt to give a fee simple in the land and an absolute interest in the personal property." By a subsequent clause the property of the daughters was placed in trust until each should attain the age of forty years. If either daughter died under the age of forty, leaving children, the property was to be held in trust for such children (grandchildren of the testator) until they arrived at the age of twenty-five. The gift to grandchildren was held too remote, but the will was otherwise sustained. The fee simple in the first clause was modified by the subsequent language and became a fee simple defeasible upon the death of either daughter before the required age.

It is asserted that *Johanson v. Johanson,* 118 Kan. 103, 233 Pac. 1039, has some bearing on the question. In that case the court was called upon to construe a will containing obvious repugnancies. The meaning of the language employed was ascertained by reading the instrument as an entirety. No trust was involved and the case is not in point in this controversy.

Reading the will from the four corners, we are clear the judgment of the trial court was right in holding the daughters received a life estate in the property devised to them.

We find no error in the action of the trial court in the removal of the testamentary trustee (*Achenback v. Baker,* 151 Kan. 827, 838, 101 P. 2d 937) and the appointment of a new trustee.

The power of the trustee so appointed to execute oil and gas leases binding on the outstanding contingent interests is settled beyond dispute in this jurisdiction. (*Robinson v. Barrett,* 142 Kan. 68, 45 P. 2d 587; *Lewis v. McConchie,* 151 Kan. 778, 784, 100 P. 2d 752.) Accordingly, we find no error in the judgment and decree of the court authorizing and empowering the trustee, subject to the supervision of the court, to execute oil and gas leases binding on the trust estate and all the beneficiaries of trust now in being or who may come into existence while the trust continues.

Appellant contends the judgment of the court as to royalties based on finding five hereinbefore set out is erroneous. The contention is

based on certain findings of the court which appellant contends are inconsistent with the judgment. If there was an inconsistency in the findings and the conclusions incorporated in the decree, the record fails to show such inconsistency was brought to the attention of the trial court. It cannot be urged for the first time on this appeal. However, there is no merit in the contention. Based on finding five, the court held that the life tenants were entitled to share in the royalties from leases executed by the testator in his lifetime, but that on the leases executed subsequent to his death, the royalties therefrom are to be invested and the life tenants are entitled to the income from such investments. The correctness of the rule is not questioned, but it is claimed that the findings are conflicting, and for that reason the ruling should be modified. From our examination of the record we think the judgment based on finding five is correct. It follows the judgment of the trial court must be affirmed. It is so ordered.